UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \*
PHILIPP LANG,                                       \*
NATHALIE SALEM,                                     \*
                                                    \*
            Plaintiffs                              \*
                                                    \*
                                                    \*
                                                    \*  CASE NO.
    v.                                              \*
                                                    \*
JEFFREY R. SABADOS                                  \*
JENNIFER R. SABADOS,                                \*
                                                    \*
            Defendants                              \*
                                                    \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

### INTRODUCTION

1.      This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.* (the "Clean Water Act," the "Act", or "CWA"). Plaintiffs, Philipp Lang and Nathalie Salem seek declaratory judgment, injunctive relief, civil penalties and attorneys' fees and costs, and any other relief the Court deems appropriate to remedy Defendants Jeffrey R. Sabados and Jennifer R. Sabados's violations of the Clean Water Act.

2.      The Defendants have caused, and continue to cause, unpermitted and unauthorized discharges of polluted stormwater, surface water, and pollutants, as defined in the Act, resulting from the development of a driveway on an easement located on Plaintiffs' property and development of lots on Defendants' adjoining property into waters of the United States. The Defendants further failed to comply with applicable U.S. Environmental Protection Agency

("EPA") National Pollutant Discharge Elimination System ("NPDES) permits, including the 2017 Construction General Permit ("CGP").[1]

3.      Section 301(a) of the Clean Water Act makes "the discharge of any pollutant by any person [ …] unlawful" except when in conformance with enumerated statutory requirements, including the requirement that a discharger obtain and comply with a NPDES permit under Section 402 of the Act.  *See* 33 U.S.C. §§ 1311(a), 1342.

4.      Construction activities that result in land disturbance of equal to or greater than one acre require coverage under the CGP pursuant to the NPDES permitting requirements of the Act.  *See* 33 U.S.C. § 1342; 40 C.F.R. § 122.26(b)(15)(i).  In addition, stormwater discharged from construction activities that has the potential to contribute to a violation of a water quality standard or for a significant contribution of pollutants to waters of the United States requires coverage under the CGP.  *See* 33 U.S.C. § 1342; 40 C.F.R. 122.26(b)(15)(ii).  Compliance with the CGP is required prior to, during, and after completing construction activities.

5.      The Defendants began construction of a driveway that was required by deed to be constructed and maintained within the boundaries of a 30 foot right of way on the Plaintiffs' property.  In the same timeframe, Defendants began development activities on their adjacent property located in Sugar Hill, New Hampshire, including land clearing and grubbing sections of the property of trees, roots, rocks, and other materials, exposing the underlying earth materials. Construction activities on the Defendants' property occurred in areas containing steep slopes of

---

[1]The EPA signed its 2022 Construction General Permit for stormwater discharges from construction activities on January 18, 2022.  The 2022 CGP became effective on February 17, 2022.  At the time Defendants commenced their development activities in 2021 they were required to obtain coverage under the 2017 CGP.  The Defendants must now obtain coverage under the 2022 CGP.

15% or greater. *See* CGP Appendix A (defining "steep slopes" as slopes "that are 15 percent or greater in grade.").

6.     The Defendants have disturbed in excess of one acre of contiguous land and less than five acres. The Defendants did not file the requisite Notice of Intent to apply for or acquire the necessary coverage under the CGP prior to commencing construction activities on both the driveway and their contiguous property development.

7.     During the course of their construction activities, Defendants failed to manage or control polluted stormwater and surface water runoff generated or resulting from their construction activities.

8.     Defendants' past and ongoing discharges of stormwater associated with construction activity have not been, and are not, authorized by the CGP.

9.     Defendant's discharges of surface water containing pollutants have at no time been authorized by a NPDES permit.

10.    Defendant's construction activities, the resulting disturbances to the land, and channeling of stormwater runoff have violated, and continue to violate, the Clean Water Act.

**JURISDICTION AND VENUE**

11.    Plaintiffs bring this civil suit under the citizen suit enforcement provisions of Section 505 of the Clean Water Act, 33 U.S.C. § 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the Act, 33 U.S.C. § 1365(a)(1) and 28 U.S.C. § 1331 (an action arising under the Constitution and laws of the United States).

12.    On December 14, 2021, Plaintiffs notified the Defendants of their intention to file suit for violations of the Clean Water Act, in compliance with the statutory notice requirements under Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), § 1365(b)(1)(a), and the

corresponding regulations at 40 C.F.R. § 135.2. A true and accurate copy of Plaintiffs' notice letter is appended to this Complaint as Exhibit 1.

13.    More than sixty days have elapsed since Plaintiffs served the notice letter on Defendants, during which time neither the EPA nor the State of New Hampshire has commenced a court action to redress the violations alleged in this complaint. 33 U.S.C. § 1365(b)(1)(B).

14.    Venue is proper in the U.S. District Court for the District of New Hampshire pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## PARTIES

15.    Plaintiff, Philipp Lang, is a New Hampshire resident, with a mailing address of 156 Mountain View Road, Franconia, New Hampshire 03580. Dr. Lang is a co-owner, along with Nathalie Salem, of real property located adjacent to the Defendants' property in Franconia.

16.    Plaintiff, Nathalie Salem, is a New Hampshire resident, with a mailing address of 156 Mountain View Road, Franconia, New Hampshire 03580. Dr. Salem is a co-owner, along with Philipp Lang, of real property located adjacent to the Defendants' property in Franconia.

17.    Defendants, Jeffrey R. Sabados and Jennifer R. Sabados, are Massachusetts residents residing at 536 Bay Street, Duxbury, Massachusetts 02332. The Defendants own property adjacent to the Plaintiffs' land and have a right-of-way over a portion of the land owned by the Plaintiffs in Franconia, New Hampshire.

## STATUTORY AND REGULATORY BACKGROUND

18.    Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States from a point source, unless the discharge complies with various enumerated sections of the Act. Among other things, Section

4

301(a) prohibits discharges not authorized by, or in violation of, the terms of a valid National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

19.    Section 502(14) of the Clean Water Acts defines "point source" broadly to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." *See* 33 U.S.C. § 1362(14). Under the regulations implementing the Clean Water Act, the definition of "discharge of a pollutant" includes "additions of pollutants into waters of the United States from: surface runoff which is collected or channeled by man [.]" 40 C.F.R. § 122.2.

20.    In 1990, the EPA promulgated regulations, set forth at 40 C.F.R. § 122.26, requiring owners of construction activities "that result in land disturbance of equal to or greater than one acre and less than five acres" to obtain a NPDES permit. 40 C.F.R. § 122.26(a)(9); 40 C.F.R. § 122.26(b)(15). In establishing these regulations, EPA found that "runoff generated while construction activities are occurring has potential for serious water quality impacts" and that such impacts "may be severe because of high unit loads of pollutants, primarily sediments" as well as other pollutants. 55 Fed. Reg. 47990, 48033 (Nov. 16, 1990). In particular, EPA found that runoff from even small construction sites may have significant negative impacts on water quality in localized areas. Id.

21.    In order to apply for coverage under the CGP, "operators" of construction sites that exceed one acre in disturbance must file with the EPA a complete and accurate notice of intent ("NOI") to be covered by the CGP and develop and implement a Stormwater Pollution

Prevention Plan ("SWPPP") identifying and controlling sources of pollutants associated with industrial discharges from the subject site.

22.     Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), provides for citizen enforcement actions against any "person" who is alleged to be in violation of an "effluent standard or limitation . . . or an order issued by the Administrator or a State with respect to such a standard or limitation."

23.     Such enforcement action under CWA Section 505(a) includes an action seeking remedies for unauthorized discharges in violation of Section 301 of the Clean Water Act, 33 U.S.C § 1311, as well as for failing to comply with one or more permit conditions in violation of Sections 402 and 505(f) of the Act, 33 U.S.C. §§ 1342, 1365(f).

24.     Each separate violation of the Clean Water Act subjects the violator to a penalty of up to of up to $56,470 per day per violation. *See* 33 U.S.C. §§ 1319(d), 1365(a); 40 C.F.R. §§ 19.1–19.4; https://www.federalregister.gov/articles/2016/07/01/2016-15411/civil-monetary-penalty-inflation-adjustment-rule#h-22.

## FACTS

25.     The Defendants commenced construction activities on Plaintiffs' land in February 2021 to construct a driveway to access their adjacent property in Sugar Hill, New Hampshire.  On or about the same time, using the partially-constructed driveway as access, Defendants commenced construction activities on their adjacent property.

26.     Defendants construction activities included tree clearing, grubbing land of rocks, stumps, and debris, excavation and earth removal, and grading.  Upon information and belief, Defendants have disturbed in excess of one acre of contiguous land, but less than five acres.

27.   Defendants failed to develop, implement or maintain appropriate stormwater controls and failed to develop, implement or maintain appropriate erosion and sedimentation controls.  Defendants excavated below the seasonal high water table exposing the groundwater table increasing the flow of stormwater runoff and surface water runoff.  Much of this activity occurred in an area with steep slopes in excess of 15 percent grade.

28.   Defendants diverted the flow of water, dug channels and deepened channels previously dug by Defendants that caused stormwater runoff to flow over the driveway onto the Plaintiffs' land where it flowed into jurisdictional wetlands on Plaintiffs' property.  Defendants directed or caused stormwater runoff from the construction site to funnel off their property and onto the Plaintiffs' property in a concentrated manner through multiple, discrete conveyances. The stormwater runoff continues to this day.

29.   Pollutants present in stormwater discharged from the Defendants' construction activities include, but are not limited to, sediment, lead, cadmium, iron, and other heavy metals – all pollutants within the meaning of the term defined in the Act.  33 U.S.C. § 1362(6); 33 U.S.C.§ 1362(13).

30.   For purposes of the 2017 CGP, the EPA considers Stormwater Discharges Associated with Construction Activity to include any time in which stormwater from areas of regulated earth disturbing activities reaches a waters of the United States.

31.   In addition, the CGP requires inspections during any measurable precipitation event defined as any storm event, or runoff from snow melt, of 0.25 inches or greater during a 24-hour period.  CGP Part 4.2.

32.    During precipitation events and instances of snowmelt, water flows onto and over exposed materials and accumulated pollutants in the exposed construction site, generating stormwater runoff associated with construction activities containing pollutants.

33.    Stormwater runoff containing pollutants from the construction activities has been, and continues to be conveyed via site grading, surface water channels dug by Defendants, and other discrete conveyances to a wetland complex on Plaintiffs' property.  This wetland complex is drained by at least one stream that drains into the Ham Branch tributary, which drains into the Gale River, which flows into the Ammonoosuc River, the Connecticut River, and eventually the Atlantic Ocean.  Each of these water bodies is a water of the United States as defined in 40 C.F.R. § 122.2, and, therefore, also "navigable waters," as defined in 33 U.S.C. § 1362(7).

34.    EPA has designated the Connecticut River as impaired under Section 303(d) of the Clean Water Act.

35.    The Defendants discharge stormwater runoff from the construction activities directly and indirectly into the Ham Branch through multiple point sources.

36.    The Defendant has failed to obtain coverage under the 2017 CGP, or any valid NPDES permit for their construction activities.

37.    In addition, as of the date of this filing, the Defendant has discharged and continues to discharge pollutants into waters of the United States in violation of the Clean Water Act, and has otherwise violated the Act, as evidenced by the following:

      a.  Defendants have not filed an electronic NOI as required by the 2017 CGP;

b. Defendants have not developed or implemented a SWPPP that meets the requirements of the 2017 CGP;

c. Defendants have failed to install and implement control measures to meet the non-numeric effluent limitations in the 2017 CGP including the requirement that operators design, install, and maintain control to "minimize sediment discharges from the site." CGP Part 2; 40 CFR § 450.21(a)(5).

38. Accordingly, Defendants are not authorized to discharge from the construction site under the 2017 CGP because they have not applied for or met the requirements of the 2017 CGP.

39. Defendants' have violated the Clean Water Act on every day they have continued their construction without coverage under the CGP and every day a discharge of stormwater occurred without coverage under the CGP, including but not limited to every precipitation event of greater than 0.25 inches or snowmelt resulting in discharge. Every day on which a violation occurs, and each of the violations of the Act, are separate and distinct violations.

**CAUSE OF ACTION**
**Count I – Unauthorized Discharge of Pollutants Into Waters of the United States**

40. Plaintiffs incorporate the allegations contained in the preceding paragraphs as though fully set forth herein.

41. Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from any point source to waters of the United States, except for

9

discharges in compliance with a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

42.    In order to be authorized to discharge lawfully under the CGP, an "operator" must meet requirements set forth in Part 1 of the 2017 CGP.  These requirements include:

(a) Determining eligibility with respect to the presence of federally listed threatened or endangered species under the Endangered Species Act;

(b) Establishing eligibility for coverage under the permit;

(c) Selecting, designing, installing, and implementing control measures in accordance with the 2017 CGP;

(d) Developing a complete and accurate SWPPP in accordance with the Section 7 of the 2017 CGP; and

(e) Filing a complete and accurate NOI to seek coverage under the 2017 CGP.

43.    Defendants are operators of a site that disturbed one or more acres of land, which means Defendants were required to obtain coverage under the CGP prior to commencing construction activities.  40 C.F.R. § 122.26(a)(9); 40 C.F.R. § 122.26(b)(15).

44.    Defendant's construction activities on Plaintiffs' property and Defendants' adjacent property have resulted in, and continue to result in, "stormwater discharge associated with small construction activity," within the meaning of 40 C.F.R. § 122.26(b)(15), to waters of the United States on, upon information and belief, every day on which there has been a discharge including but not limited to measurable storm events, or snow melt event, equal to or in excess of 0.25 inches.  CGP part 4.2.2.

45.    Defendants' discharges of stormwater associated with small construction activity ("construction stormwater discharges") are discharges of pollutants within the meaning of 33 U.S.C. § 1362(12).

46.    Defendants' construction stormwater discharges are "point source" discharges into waters of the United States.

47.    Construction stormwater discharges have caused and continue to cause discharges of pollutants to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

48.    Defendants have discharged and continue to discharge construction stormwater without authorization under a valid NPDES permit as required by CWA Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

49.    Each and every day on which Defendants have discharged and continue to discharge construction stormwater without authorization under a valid NPDES permit constitutes a distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a) and Section 402 of the CWA, 33 U.S.C. § 1342.

**Second Cause of Action:**
**Failure to Obtain a Permit for Construction Stormwater Discharges**

50.    Plaintiffs incorporate the allegations contained in the preceding paragraphs as though fully set forth herein.

51.    Defendants have been required to obtain permit coverage for their construction activities under the 2017 CGP, or by seeking and obtaining an individual NPDES permit pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

11

52.     Each and every day on which Defendants have not had CGP or individual NPDES permit coverage for their construction activities is a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and Section 402 of the Act, 33 U.S.C. § 1342.

**Third Cause of Action:**
**Failure to Comply with a Permit for Construction Stormwater Discharge**

53.     Plaintiffs incorporate the allegations contained in the preceding paragraphs as though fully set forth herein.

54.     Regulated construction stormwater discharges are required at a minimum to comply with the requirements of the CGP, which include but are not limited to:

(a)     Developing and implementing a complete and accurate Stormwater Pollution Prevention Plan;

(b)     Submitting a complete Notice of Intent to be covered by the CGP;

(c)     Implementing required stormwater control measures;

(d)     Conducting site inspections in accord with the CGP; and

(e)     Complying with reporting and recordkeeping requirements, including but not limited to reporting of any Corrective Actions during an applicable time period.

55.     Defendants have failed, and continue to fail, to comply with the requirements of the CGP, including, upon information and belief, each of the requirements described above.

56.     Each and every day on which Defendant has failed to comply with each element of the CGP is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(a)      Declare Defendants to have violated and to be in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for their unlawful and unauthorized discharges of pollutants to waters of the United States from construction stormwater discharges;

(b)      Declare Defendants to have violated and to be in violation of Section 402 of the Clean Water Act, 33 U.S.C. § 1342, for their failure to obtain coverage under the 2017 CGP for their construction activities;

(c)      Declare Defendants to have violated and to be in violation of Section 402 of the Clean Water Act, 33 U.S.C. § 1342, for their failure to comply with all applicable requirements of the CGP for their construction activities;

(d)      Enjoin Defendants from discharging pollutants from the construction site into waters of the United States except as authorized by and in compliance with a National Pollutant Discharge Elimination Permit;

(e)      Order Defendants to comply fully and immediately with all applicable requirements of the CGP for their construction activities;

(f)      Order Defendant to pay civil penalties of up to $56,470 per day per violation for all violations of Sections 1311 and 1342.  *See* 33 U.S.C. §§ 1319(d), 1365(a); 40 C.F.R. §§ 19.1–19.4; https://www.federalregister.gov/articles/2016/07/01/2016-15411/civil-monetary-penalty-inflation-adjustment-rule#h-22;

(h)      Order Defendants to take appropriate actions to remedy harm caused by Defendants' noncompliance with the Clean Water Act;

(i)      Enter judgment in favor of Plaintiffs and against Defendants on all Counts;

13

(j)       Award Plaintiffs' costs (including reasonable investigative, attorney, witness, and

consultant fees) as permitted by Section 505(d) of the Clean Water Act, 33 U.S.C. §

1365(d); and

(k)       Award any such other and further relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff requests a jury trial on all counts so triable.

Respectfully submitted,

PHILIPP LANG & NATHALIE SALEM

By their Attorneys,

McLANE MIDDLETON
  PROFESSIONAL ASSOCIATION

Date:    February 22, 2022        By:   /s/ Mark C. Rouvalis
                                         Mark C. Rouvalis, NH Bar No. 6565
                                         mark.rouvalis@mclane.com
                                         Viggo C. Fish, NH Bar No. 267579
                                         viggo.fish@mclane.com
                                         900 Elm Street, P.O. Box 326
                                         Manchester, New Hampshire 03101
                                         Telephone:  603.625.6464

14

121262\20810919.v1

EXHIBIT 1



MARK C. ROUVALIS
Direct Dial: 603.628.1329
Email: mark.rouvalis@mclane.com
Admitted in NH and MA
900 Elm Street, P.O. Box 326
Manchester, NH 03105-0326
T 603.625.6464
F 603.625.5650

December 14, 2021

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Mr. Jeffrey R. Sabados
Ms. Jennifer R Sabados
536 Bay Street
Duxbury, MA 02332

> **Re:    Notice of Intent to Sue Pursuant to Clean Water Act § 1365**

Dear Mr. and Ms. Sabados:

I write on behalf of Drs. Philipp Lang and Nathalie Salem.  This letter constitutes notice pursuant to 33 U.S.C. § 1365(a) and (b) of the Federal Water Pollution Control Act ("Clean Water Act", "CWA", or the "Act"), and 40 C.F.R., part 135, of Drs. Lang and Salem's intention to file suit against you in United States District Court of the District of New Hampshire for violations of the Act, 33 U.S.C. §§ 1251 et. seq., specified below, seeking appropriate equitable relief, civil penalties, attorneys' fees, and other relief no earlier than 60 days from the postmark date of this Notice letter.  A courtesy copy of this letter has been sent to your counsel, Clara Lyons.

The subject of this notice letter are your violations of the CWA, including your unpermitted construction activities, that have caused, and continue to cause, discharges of stormwater, surface water, and pollutants, as defined by the Act, from multiple conveyances, into waters of the United States.  You have violated, and continue to violate, the National Pollutant Discharge Elimination System ("NPDES") permitting requirements pursuant to 33 U.S.C. § 1342.  These violations include the failure to apply for and obtain coverage under the requisite NPDES permit for these discharges, including the Construction General Permit ("CGP") governing construction projects, such as yours, of greater than one acre of contiguous disturbance (40 C.F.R. 122.26(b)(15)), and the failure to comply with the specific requirements of such permit, in violation of 33 U.S.C. § 1342.  In addition, you have violated, and continue to violate, the effluent limitations pursuant to § 1311(a) of the Act.  As a result of your actions and omissions to act, continuous and/or intermittent unpermitted discharges of stormwater, surface water, and pollutants, as defined under the Act, from multiple point sources on your property, or on the right of way on the Lang/Salem property that you have altered, have occurred and will continue to occur into a wetlands system on the Lang/Salem property, and into waters of the United States, including streams that connect to the Ham Branch, the Gale River, the Ammonoosuc River, the Connecticut River and eventually the Atlantic Ocean.

EXHIBIT 1

Mr. Jeffrey R. Sabados
Ms. Jennifer R Sabados
December 14, 2021
Page 2

## I.    FACTS SUPPORTING YOUR VIOLATIONS OF THE CLEAN WATER ACT

In or about February 2021, you and your agents began construction of a driveway that was required by deed to be constructed and maintained within the boundaries of a 30 foot driveway right of way on the Lang/Salem property.  This driveway was intended to provide access to your adjacent property in Sugar Hill.  You began this work without a proper survey, without erosion or drainage controls, and without proper permits, whether at the State or federal level.  When constructing the driveway on the right of way located on the Lang/Salem property, you and/or your agents, excavated below the seasonal high water table in an area with steep slopes, exposing the groundwater table and further increasing the flow of surface water runoff, including pollutants as defined in the Act, such as sediment and toxic pollutants, onto the Lang/Salem property.  You and/or your agents failed to plan for or implement stormwater and surface water controls, and failed to control stormwater and surface water runoff from the driveway on the right of way.  Rather, you, and/or your agents, dug additional channels, deepened existing channels, and installed water bars, all of which directed, channeled, and concentrated stormwater, surface water, and pollutants (including toxic heavy metals and sediment) from your property onto the Lang/Salem property.

In the same time period as the work that occurred on the right of way, you and/or your agents also began development activities on your adjacent property, including land clearing and grubbing sections of the property of trees, roots, rocks, and other materials, exposing the underlying earth materials.  Your property is located on the east side of Ore Hill, an approximately 2,000 foot high mountain in the Town of Sugar Hill that historically hosted or is in proximity to an iron mine (Franconia Iron Mine, Ore Hill, Sugar Hill, NH).  Your property is approximately 60 acres in size and contains steep slopes.[1]  To date, the development activities have cleared in excess of one acre of contiguous land.  During the course of, and as a result of, your land clearing activities you, and/or your agents, directed or allowed all or substantially all stormwater and surface water runoff, including pollutants (defined in the Act to include sediment and toxic pollutants) to funnel off of your property and onto the Lang/Salem property in a concentrated manner through multiple, discrete conveyances.  Further, you, and/or your agents, dug one or more channels directing water and pollutants, including sediment and toxic pollutants, to flow from your property onto the Lang/Salem property.  The runoff caused by your construction activities continues to this day.

In addition, the work performed on your property, the adjacent right of way and the neighboring Holland property which you adversely affected, significantly changed the pre-disturbance drainage patterns, resulting in extensive mud flows on the Lang/Salem property, some extending as much as two hundred feet in length, among other harms.

Analyses of the stormwater and surface water runoff from your property documented concentrations of lead and cadmium, toxic pollutants that can cause serious adverse health

---

[1] *See* CGP Appendix A, defining "steep slopes" as slopes "that are 15 percent or greater in grade."

EXHIBIT 1

Mr. Jeffrey R. Sabados
Ms. Jennifer R Sabados
December 14, 2021
Page 3

effects, at concentrations above State and federal ecological screening levels.  The water quality analyses establish that the stormwater and surface water discharging as a result of unpermitted construction activities are conveying, through multiple discrete conveyances, regulated pollutants, in addition to sediment and other debris, from your property, to a wetland on the Lang/Salem property, which is hydraulically connected to at least one stream that is a tributary of the Ham Branch, which drains into the Gale River, the Amonoosuc River, the Connecticut River, and eventually the Atlantic Ocean, navigable waters under any formulation of the Waters of the United States rule.  Thus, the unpermitted stormwater and surface water discharges are adversely affecting waters of the United States in violation of the CWA.

You failed to develop or implement required plans, using best practices, to control water runoff or implement sediment and erosion controls to keep stormwater, surface water, and pollutants, including sediment and toxic pollutants, on your property and keep it from flowing onto the Lang/Salem property, into wetlands, and into waters of the United States.  Importantly, you failed to prepare a SWPPP in compliance with the NPDES permitting requirements.  These and other failures caused, and continue to cause, significant amounts of stormwater, surface water, and pollutants, including sediment and toxic pollutants, to flow onto the Lang/Salem property, into wetlands, and into waters of the United States.

II.    **THE CLEAN WATER ACT REQUIRED A PERMIT FOR YOUR CONSTRUCTION ACTIVITIES AND PROHIBITS THE UNPERMITTED DISCHARGES OF POLLUTANTS FROM POINT SOURCES INTO WATERS OF THE UNITED STATES**

A.  Clean Water Act Requirements

Under the CWA, it is unlawful for any person to discharge pollutants from a "point source" to navigable waters[2] without first obtaining and complying with an NPDES permit governing the quantity and quality of discharges. 33 U.S.C. §§ 1311(a); 1342(a).  The duty to apply for a permit extends to "[a]ny person who discharges or proposes to discharge pollutants. . ."  40 C.F.R. § 122.21(a).  The duty also extends to any person commencing construction activities "including clearing, grading, and excavating that result in land disturbance of equal to or greater than one acre…"  40 C.F.R. 122.26(b)(15).

Under the statute, the term "discharge of pollutants" means "any addition of any pollutant to navigable waters from any point source" and includes additions of pollutants into waters of the United States from "surface water runoff which is collected or channeled by man."  33 U.S.C. § 1362(12); *see also* 40 C.F.R. § 122.2.  Pollutants are defined to include, among other examples, toxic pollutants, sediment, rock and sand discharged into water.  33 U.S.C. § 1362(6); 33 U.S.C. § 1362(13).  A point source is defined as "any discernable, confined or discrete conveyance, including but not limited to any pipe, ditch channel, tunnel conduit [or] container… from which

_____

[2] "Navigable waters" means "the waters of the United States." 33 U.S.C. § 1362(7).

EXHIBIT 1

Mr. Jeffrey R. Sabados
Ms. Jennifer R Sabados
December 14, 2021
Page 4

pollutants are or may be discharged.  33 U.S.C. § 1362 (14) *see also* 40 C.F.R. § 122.2 (defining "discharge of a pollutant" to include "surface runoff which is collected or channeled by man"); *Cty. of Maui v. Hawaii Wildlife Fund*, 140 S. Ct, 1462, 1469 (2020) (permit required where there is the functional equivalent of a direct discharge).

You have discharged, and continue to discharge, or caused to be discharged stormwater,[3] surface water, and pollutants, including sediment and toxic pollutants, into waters of the United States without a permit.  Because you have not obtained coverage for the stormwater discharges under the CGP (or an individual NPDES permit), you are illegally discharging stormwater without a permit in violation of 33 U.S.C. § 1342.  Further, by failing to apply for and comply with the specific requirements of the CGP, you are in violation of 33 U.S.C. § 1342 and 40 C.F.R. 122.26(b) (15), among other statutory and regulatory provisions.

III.    **FAILURE TO APPLY FOR AND COMPLY WITH THE REQUIREMENTS OF THE CONSTRUCTION GENERAL PERMIT AND FAILURE TO COMPLY WITH EFFLUENT LIMITATIONS UNDER THE ACT AND ITS ACCOMPANYING REGULATIONS**

Your construction activities have resulted and are resulting in at least two broad categories of violations under the CWA:  1) the failure to obtain a permit and perform the work associated with such a permit; 2) the failure to meet effluent limits required for discharges of stormwater and surface water into waters of the United States.

A.    Your failure to apply for and comply with the requirements of the Construction General Permit

You and your agents conducted development and construction work without a required CGP in violation of the NPDES permitting requirements of the Act.  *See* 33 U.S.C. § 1342; 40 C.F.R. § 122.26(b)(15).  Because you and/or your agents cleared in excess of one acre of contiguous land, you were, are, and will continue to be required to obtain coverage under the CGP.  *See also* 40 C.F.R. § 122.26(b)(15) (requiring NPDES permit for "construction activities including clearing, grading, and excavating that result in land disturbance of equal to or greater than one acre and less than five acres.").  As set forth in more detail below, the failure to apply for coverage under the CGP by properly completing a Notice of Intent ("NOI") also led to the failure to comply with the specific prerequisites for submitting such notice.  These prerequisites include, but are not limited to, preparing a stormwater pollution prevention plan ("SWPPP").  You also failed to comply with each requirement of compliance with the CGP including, but not limited to: conducting a comprehensive site assessment, performing an endangered species

---

[3] The CWA's permitting requirements apply specifically to discharges of polluted storm water.  33 U.S.C. § 1342(p).  EPA regulations also require an NPDES permit for a discharge of pollutants which the EPA determines contribute to a violation of a water quality standard or is a significant contributor of pollutants to waters of the United States. 40 C.F.R. § 122.26(a)(1)(v).

EXHIBIT 1

Mr. Jeffrey R. Sabados
Ms. Jennifer R Sabados
December 14, 2021
Page 5

review including a Natural Heritage Bureau (NHB) review, delineating wetlands and determining wetland setbacks, selecting and implementing appropriate stormwater controls, selecting and implementing appropriate sediment and erosion controls, selecting and implementing appropriate pollution prevention controls, selecting and implementing appropriate protections to comply with water quality-based effluent limitations, and engaging a "qualified person" to perform weekly site inspections including erosion control inspections.[4]  The failure to comply with these requirements constitute separate violations of the CWA and its NPDES/CGP permitting requirements.  33 U.S.C. § 1342.

### 1.    The failure to develop and implement a Stormwater Pollution Prevention Plan.

As a prerequisite to applying for coverage under the CGP, you must develop and implement a Stormwater Pollution Prevention Plan ("SWPPP").[5]  The SWPPP must include, but is not limited to, the following: information related to a site description, a summary of pollutant sources, a description of control measures to prevent stormwater pollution, and schedules and procedures pertaining to control measures for, and monitoring of, stormwater.  You have failed to develop and implement a SWPPP in accordance with the CGP requirements in violation of the CGP and 33 U.S.C. § 1342.

### 2.    The failure to submit to EPA a Notice of Intent to be covered under the CGP.

In order to be eligible to commence construction and discharge under the CGP, you were required, and are still required, to submit a complete Notice of Intent ("NOI") to the EPA.[6]  Your failure to complete and submit an NOI prior to construction is a violation of the CGP and 33 U.S.C. § 1342.

### 3.    The failure to develop and implement stormwater control measures to meet water-quality effluent limitations.

To be eligible to discharge under the CGP, you must have designed, installed, and maintained control measures to minimize the discharge of polluted stormwater from reaching nearby waterbodies.[7]  In designing such controls, you must account for the following factors:

(a) the amount, frequency, intensity, and duration of precipitation;

---

[4] CGP parts 2-7.
[5] CGP part 7.
[6] CGP part 1.4.
[7] CGP part 2.1.

EXHIBIT 1

Mr. Jeffrey R. Sabados
Ms. Jennifer R Sabados
December 14, 2021
Page 6

(b) the nature of stormwater runoff and run-on on the site, including factors such as expected flow from impervious surfaces, slopes, and site drainage features. You must design stormwater controls to control stormwater volume, velocity, and peak flow rates to minimize discharges of pollutants in stormwater and to minimize channel and other erosion and scour in the immediate vicinity of discharge points; and

(c) the soil type and range of soil particle sizes expected to be present on the site.[8]

All stormwater controls must be designed in accordance with best engineering practices, including satisfying design specifications and manufacturers' specifications, where applicable.[9] In addition, all stormwater controls must be installed by the time each phase of construction activities have begun and must be maintained and remain in effective operation condition during the permit coverage period.[10]  If the control measures are not achieving their intended effect of minimizing pollutant discharges, you must modify these control measures to correct the deficiency by the close of the next business day.[11]  You have failed to implement the required control measures in violation of the CGP and 33 U.S.C. § 1342.

### 4.    The failure to implement erosion and sediment controls.

The CGP requires the implementation of erosion and sediment controls to minimize the discharge of pollutants.  Such controls include, but are not limited to the following:

(a) Install sediment controls along any perimeter areas of the site that will receive pollutant discharges;

(b) Minimize sediment track out by restricting vehicle use and using appropriate stabilization techniques;

(c) Manage stockpiles or land clearing debris piles composed, in whole or in part, of sediment and/or soil;

(d) Minimize steep slope disturbances;

(e) Control stormwater discharges, including both peak flowrates and total stormwater volume, to minimize channel and other erosion; and

(f) Stabilize exposed portions of the site.[12]

---

[8] CGP part 2.1.1.
[9] CGP part 2.1.2.
[10] CGP part 2.1.3; 2.1.4.
[11] CGP part 2.1.4.
[12] *See generally*, CGP parts 2.2.1-2.2.14.

EXHIBIT 1

Mr. Jeffrey R. Sabados
Ms. Jennifer R Sabados
December 14, 2021
Page 7

You have failed to implement and maintain some or all of the required sediment and erosion control measures in violation of the CGP and 33 U.S.C. § 1342.

### 5.     The failure to conduct routine construction inspections.

To maintain eligibility under the CGP, you must hire a "qualified person"[13] to conduct periodic site inspections in accordance with the regulations, including within 24 hours of the occurrence of a storm event of 0.25 inches or greater.[14] To determine whether a storm event equal to or greater than 0.25 inches has occurred, you must (1) keep a properly maintained rain gauge on the site, or (2) obtain the storm event information from a representative weather station.[15] Your failure to engage a qualified person and/or to conduct necessary site inspections constitute separate violations of the Act for each storm event, or snow melt event, equal to or greater than 0.25 inches.

### 6.     The failure to perform corrective action.

Pursuant to the CGP, you are required to undertake corrective action when stormwater controls were never installed or fail to operate appropriately after installation.[16] You were, and continue to be, required to take corrective action to implement stormwater controls necessary to comply with the requirements of the CGP that were never installed, or were installed incorrectly, and to keep such controls in proper working order; further, you are required to prevent discharges that cause an exceedance of applicable water quality standards, and to remedy prohibited discharges that have occurred.[17]

Where a condition requiring corrective action has been identified, you were, and are, required to immediately take all reasonable steps to address the condition, including cleaning up any contaminated surfaces.[18] The failure to implement, immediately, necessary corrective action to remedy discharge violations constitute further violations of the CGP and 33 U.S.C. § 1342.

In summary, you are violating and will continue to violate 33 U.S.C. § 1342 by failing to apply for, obtain coverage, and comply with the requirements of the CGP. The CGP violations identified below are ongoing and continuous, and, until you come into full compliance with the requirements of the CGP and CWA, these violations will continue.

---

[13] A "qualified person" is a person knowledgeable in the principles and practice of erosion and sediment controls and pollution prevention, who possesses the appropriate skills and training to assess conditions at the construction site that could impact stormwater quality, and the appropriate skills and training to assess the effectiveness of any stormwater controls selected and installed to meet the requirements of this permit. *See* CGP part 4.1, n. 47.

[14] CGP part 4.2.2 (this includes the occurrence of runoff from snowmelt sufficient to cause a discharge).

[15] CGP part 4.2.2.

[16] CGP part 5.1.

[17] CGP part 5.1.1-5.1.4.

[18] CGP part 5.2.1.

EXHIBIT 1

Mr. Jeffrey R. Sabados
Ms. Jennifer R Sabados
December 14, 2021
Page 8


To the extent you and/or your agents intend to, or do clear more land, additional or other permits may be needed to comply with the Act and to avoid further harm to the Lang/Salem property and resulting pollution to waters of the United States.

> B.    <u>You are discharging, or causing to be discharged, stormwater, surface waters and pollutants into waters of the United States without a permit in violation of the Act.</u>

By failing to control water on your property, by altering the pre-construction drainage patterns, and by improperly channeling water from your property, the right of way and the neighboring Holland property onto the Lang/Salem property, you are causing "discharges of pollutants" within the meaning of 33 U.S.C. § 1362(12) onto the Lang/Salem property and to waters of the United States in violation of the Act. *See also* 40 C.F.R. § 122.2 (defining discharge of a pollutant to include "surface runoff which is collected or channeled by man"). Such discharges occur due to re-directed surface waters, as well as during storm events and from snow melt, on every day that there has been a measurable precipitation event, including snow melt, at or above 0.25 inches.[19]  You are discharging pollutants from and through at least the following point sources: the numerous channels, ditches and other discrete conveyances within the disturbed construction area (the driveway right of way, your property and the neighboring Holland property that your construction activities have adversely affected) that are conveying and concentrating pollutants in stormwater and surface water into waters of the United States. These discrete conveyances, and the disturbed areas of the your property, the driveway right of way and the Holland property, are continuously or intermittently discharging pollutants into at least one stream that connects to the Ham Branch, the Gale River, the Amonoosuc River, the Connecticut River, and the Atlantic Ocean – waters of the United States within the meaning of 40 C.F.R. § 122.2 and, therefore, "navigable waters," as defined in 33 U.S.C. §1362(7) and interpreted by the courts. *See generally, Cty. Of Maui, Hawaii v. Hawaii Wildlife Fund*, 140 S. Ct. 1462, 1469 (2020).

Among the pollutants contained in the stormwater and surface water runoff are sediment, toxic pollutants (including levels of lead and cadmium above regulatory limits), rock, vegetation and other debris. *See* 33 U.S.C. § 1362(c) (defining "pollutants" broadly) and 40 C.F.R. § 401.15 (identifying lead and cadmium as toxic pollutants). These heavy metals and other pollutants are causing and contributing to cause violations of water quality standards and/or are a significant contributor of pollutants to the Lang/Salem property and the waters of the United States in violation of the CWA.

These continuous or intermittent discharges of stormwater from various point sources into waters of the United States violate the effluent limitations set forth pursuant to 33 U.S.C. § 1311(a) and regulations promulgated thereunder. In addition, you have required a CGP since the inception of construction activities in February 2021. The failure to apply for and obtain the

---

[19] *See* CGP part 4.2.

EXHIBIT 1

Mr. Jeffrey R. Sabados
Ms. Jennifer R Sabados
December 14, 2021
Page 9

requisite CGP for your unlawful discharges of pollutants at your property and on the driveway right of way, in violation of 33 U.S.C. § 1342.  As a result, your construction activities have been in violation of the Act since at least February 2021, or the start of your construction activities on your property and the right of way.

## IV.    VIOLATIONS ARE ONGOING AND CONTINUOUS

Each day on which the construction activities of you and/or your agents continue without coverage under the CGP, or discharge of stormwater continue without a CGP, is a separate and distinct violation of 33 U.S.C. §§ 1311(a) and 1342.  You have discharged stormwater and polluted surface water without a permit in violation of 33 U.S.C. §§ 1311(a) and 1342 on every day since at least the start of construction in February 2021 and/or on every day in which there has been a measurable storm event, or snow melt event, equal to or in excess of 0.25 inches.

These violations are ongoing and continuous, and barring your coming into complete and timely compliance with the NPDES permitting requirement and the effluent limitation requirements of the Act, these violations will continue.

## V.    REQUESTS FOR RELIEF

The CWA permits a citizen to bring a civil action against any person "alleged to be in violation…of an effluent standard or limitation."  33 U.S.C. § 1365(a)(1).  In turn, a violation of an "effluent standard or limitation" is defined as an "unlawful act under" § 1311(a).  33 U.S.C. § 1365(f)(1).  *See Gwaltney of Smithfield, Ltd. V. Chesapeake Bay Found., Inc*. 108 S. CT 376, 385 (1987) (Allowing citizen suits where Plaintiffs allege, as here, continuous or intermittent violation of Act).  In their citizen suit, Drs. Lang and Salem will seek declaratory and injunctive relief to prevent further violations of the Act and to remediate past violations, pursuant to Sections 1365(a) and (d) of the CWA, and such other relief as permitted by law.

In addition, Drs. Lang and Salem will seek an order for the payment of civil penalties. Pursuant to Section 1319(d), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Act subjects you to a penalty of up to $56,470 per day per violation for all violations of Sections 1311(a).  Further, Drs. Lang and Salem will request recovery of their attorneys' fees and costs, as permitted by Section 1365(d) of the CWA.

## VI.    CONCLUSION

Without limiting the generality of the allegations set forth above, this notice of intent to sue puts you on notice that Drs. Lang and Salem will allege in a federal court complaint that you have violated, and will continue to violate, Sections 1311(a) and 1342(a) continuously since the start of construction activities in February 2021 for your failure to apply for, obtain, and implement a CGP, for your unpermitted and unlawful discharges of pollutants (including sediment and toxic pollutants) in stormwater and surface water onto the Lang/Salem property

EXHIBIT 1

Mr. Jeffrey R. Sabados
Ms. Jennifer R Sabados
December 14, 2021
Page 10

and into waters of the United States.  These violations are ongoing and continuing.  They will seek injunctive and declaratory relief, civil penalties, and attorneys' fees and costs.

Very truly yours,

Mark C. Rouvalis

MCR:vcf

Cc:    Clara Lyons, Esq.
       Getman, Stacey, Steere and Schultess
       1838 Elm Street
       Manchester, NH 03104

       Michael S. Regan
       Administrator
       U.S. Environmental Protection Agency
       Ariel Rios Building
       1200 Pennsylvania Avenue, N.W.
       Washington, DC 20460

       Deborah Szaro
       Acting EPA Region 1Administrator
       Environmental Protection Agency
       5 Post Office Square - Suite 100
       Boston, MA 02109-3912

       Robert R. Scott
       Commissioner
       New Hampshire Department of Environmental Services
       29 Hazen Drive
       Concord, NH 03301

EXHIBIT 1

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**Jeffrey & Jennifer Sabados
536 Bay Street
Duxbury, MA 02332**

|||||||||| (barcode)
9590 9402 6640 1060 7856 01

2. Article Number *(Transfer from service label)*
7021 0350 0001 5130 1111

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*          C. Date of Delivery

D. Is delivery address different from Item 1?   ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053                Domestic Return Receipt